FREDERICK PHILLIPS
Senior Counsel
Environmental Enforcement Section
Energy and Natural Resources Division United States Department of Justice
P.O. Box 7611, Ben Franklin Station Washington, DC 20044-7611
(202) 532-3311
Frederick.Phillips@usdoj.gov
*Counsel for Plaintiff United States of America*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| BASF CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>COMPLAINT</u>

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney, acting at the request of the Regional Administrator of the United States Environmental Protection Agency ("EPA") for Region 2, files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought under Sections 106, 107, and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606, 9607, and 9607(g)(2) ("CERCLA").

2. The United States seeks: (a) reimbursement of costs incurred by EPA in response to releases and threatened releases of hazardous substances into the environment at or from the First Operable Unit "OU1" (groundwater contamination) and Second Operable Unit ("OU2") (soils contamination) of the CPS/Madison Superfund Site ("Site"), located in Old Bridge Township, New Jersey; (b) performance by Defendant BASF Corporation of the part of the response action that addresses organic contamination for OU1 and the entire response action for OU2 consistent with the National Contingency Plan, 40 C.F.R part 300; and (c) a declaratory judgment that Defendant will be liable for any further response costs that the United States may incur as a result of a release or threatened release of hazardous substances into the environment at or from organic contamination in OU1 and at or from OU2.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345 and Sections 106, 107, and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607 & 9613(b).

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and Sections 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) & 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## THE DEFENDANT

5. BASF Corporation ("BASF") is the North American affiliate of BASF, SE based in Ludwigshafen, Germany. Its principal place of business is in Florham Park, New Jersey.

6. BASF is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

7. On April 9, 2009, BASF acquired Ciba Specialty Chemicals Corporation ("Ciba"), a former owner/operator at the Site which had processed, treated, and stored organic chemicals used in the production of water treatment agents, lubricants, oil field chemicals, and anti-corrosive agents at the Site.

8. BASF currently owns a portion of the Site.

## STATUTORY BACKGROUND

9. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response"

actions, 42 U.S.C. §§ 9604(a) & 9601(25).

10. Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

11. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –
> The owner and operator of a vessel or a facility,
>
> Any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, …

> shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan….

12. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority. In EPA Region 2, this authority has been further delegated to the Director of the Superfund and Emergency Management Division.

13. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides that the United States is also authorized to seek injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of hazardous substance at or from a facility.

14. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that in any action under CERCLA Section 107, the court shall enter a declaratory judgment on liability for response costs that will be binding on any subsequent action or actions to recover further response costs.

## GENERAL ALLEGATIONS

15. The Site covers approximately 35 acres, located at 554 Waterworks Road in Old Bridge Township, Middlesex County, New Jersey.

16. The Site is comprised of two adjacent parcels, one owned by BASF and the other owned by Arnet Realty and HB Warehousing. The parcel owned by Arnet Realty and HB Warehousing includes the operation sites of Old Bridge Minerals and its corporate predecessors, Madison Industries and Old Bridge Chemicals. Arnet Realty, HB Warehousing, and Old Bridge Minerals are interrelated entities and are referred to as the Madison Parties.

17. Madison Industries, corporate predecessor to Old Bridge Minerals, began operations in 1967 and produced inorganic chemicals, primarily zinc salts that are used in fertilizers, pharmaceuticals, and food additives. Old Bridge Minerals is still operating its facility producing copper chemicals and zinc sulfate.

18. Historically the Site contained three manufacturing facilities under separate ownership, the CPS Chemical Company facility (currently inactive), the Madison Industries, Inc. facility, and the Old Bridge Chemicals facility.

19. The CPS Chemical Company ("CPS") began operation at its facility in 1967. In 1997 CPS was acquired by Allied Colloids, and in 1998 Allied Colloids was acquired by Ciba. Manufacturing at this facility ceased in 2001. Several organic chemicals were manufactured and processed at this facility, including

alcohols, esters and monomers for water treatments. Ciba was acquired by BASF Corporation in 2009, at which time BASF assumed the obligations of Ciba as its corporate successor.

20. The CPS property contains contaminated soils that act as a contaminant source to groundwater and pose potential contact hazards. Volatile organic compounds ("VOCs") predominantly originate from soils in the former process area on the southern half of the CPS property. These compounds include: 1,2,4-trichlorobenzene; chlorobenzene; benzene; methylene chloride; 1,1,2,2-tetrachloroethane; 1,4-dichlorobenzene; 1,2-dichloroethane; 1,1-dichloroethene; tetrachloroethene; trichloroethene; cis-1,2-dichloroethene; and vinyl chloride. A second source area on the CPS property is soils impacted with 1,4-dioxane at the former truck and rail car loading area, located near the south-west corner of the storage building along the border between the CPS and Madison properties, which was used to repackage 1,4-dioxane for redistribution. The CPS property is a "facility" as defined at CERCLA Section 101(9), 42 U.S.C. § 9601(9).

21. The CPS and Madison properties (jointly, the "Site") was added to the National Priorities List on September 8, 1984. 48 Fed. Reg. 40658 (1983).

22. Beginning in 1991, under the direction of the New Jersey Department of Environmental Protection ("NJDEP"), CPS and Madison installed a groundwater recovery system to intercept Site groundwater contamination entering

the Runyon Watershed. This system consisted of six recovery wells, three of which were operated by CPS and three of which were operated by Madison. When the groundwater surrounding these recovery wells achieved the clean-up goals in place at that time, the recovery wells were shut down and replaced by a system of pump and treatment wells on each of the company's properties which are collectively known as the Interim Remedial Measure ("IRM") wells. A Performance Monitoring Program ("PMP") was initiated to evaluate the effectiveness of the IRM wells. Pursuant to the PMP, Defendant and the Madison Parties continue to monitor the IRM wells, which have been reconfigured several times to adjust to reduced contaminant levels in the plumes.

23. To manage cleanup operations at the Site, EPA has divided response actions for the Site into portions referred to as "Operable Units" or "OUs." OU1 consists of contaminated groundwater that has been contaminated with volatile organic compounds from the operations of BASF and with metals from Old Bridge Chemicals. OU2 consists of contaminated soils on the BASF parcel.

24. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, BASF completed a Remedial Investigation for OU1 and OU2 on July 10, 2015, and a Feasibility Study for the Site on November 1, 2018, in accordance with 40 C.F.R. § 300.430.

25. On September 30, 2019, EPA selected the remedial action to be

implemented at OU1 and OU2, which is embodied in a final Record of Decision ("OU1/OU2 Record of Decision" or "ROD").

26. BASF entered into an Administrative Settlement Agreement and Order on Consent, Index No. CERCLA-02-2020-2031, on September 28, 2020 to perform the preliminary design investigation and remedial design work for the OU1/OU2 remedy to address groundwater contaminated with organic compounds and the soils on the portion of the Site owned and operated by BASF's predecessor Ciba.

27. On August 21, 2025, EPA issued an Explanation of Significant Differences ("ESD") to document a change to the OU1 remedy for organic contamination selected in the OU1/OU2 ROD ("OU1 ESD") due to the discovery of site conditions unknown at the time of the publication of the OU1/OU2 ROD.

## FIRST CLAIM FOR RELIEF

*Cost Recovery Under CERCLA Section 107*

28. The above paragraphs are re-alleged and incorporated herein by reference.

29. Defendant BASF is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as a "person" who "owns or operates" a "facility" as those terms are defined at Sections 101(21), (20), and (9) of CERCLA, 42 U.S.C. §§ 9601(21), (20), and (9), respectively.

30. Defendant BASF is liable under Section 107(a)(2) of CERCLA, 42

U.S.C. § 9607(a)(2), as a successor in interest to a person who owned or operated the facility at the time that hazardous substances were disposed of there.

31. There has been a "release" or a "threatened release" of "hazardous substances" into the "environment" at or from OU1 and OU2 of the Site, as those terms are defined in Sections 101(22), (14), and (8) of CERCLA, 42 U.S.C. §§ 9601(22), (14), and (8), respectively.

32. In undertaking response actions to address the release or threat of release of hazardous substances from organic contamination at OU1 and soil contamination at OU2 of the Site, EPA has incurred and will continue to incur "response costs" as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

33. The response costs incurred thus far were incurred in a manner not inconsistent with the National Contingency Plan, promulgated under Section 105 of CERCLA. 42 U.S.C. § 9605 and codified at 40 C.F.R. Part 300.

34. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendant is jointly and severally liable for all OU1 response costs for organic contamination and all OU2 response costs incurred by the United States, including enforcement costs and prejudgment interest.

**SECOND CLAIM FOR RELIEF**

*Injunctive Relief Under CERCLA Section 106*

35. The above paragraphs are re-alleged and incorporated herein by reference.

36. EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual or threatened releases of hazardous substances from the organic contamination at OU1 and soil contamination at OU2 of the Site.

37. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), Defendant is jointly and severally liable for injunctive relief to abate the danger or threat presented by a release or threatened release of hazardous substances into the environment from organic contamination at OU1 and soil contamination at OU2 of the Site.

38. EPA has determined that the response actions selected in the OU1/OU2 ROD, as modified by the OU1 ESD are necessary to abate the danger or threat from organic contamination at OU1 of the Site.

39. EPA has determined that the response actions selected in the OU1/OU2 ROD are necessary to abate the danger or threat from the soils at OU2 of the Site.

40. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), Defendant is jointly and severally liable to undertake the remedial action as described in the

OU1/OU2 ROD, as modified by the ESD, for organic contamination in the groundwater at OU1 and for the contaminated soils at OU2 to abate the danger or threat at or from OU1/OU2 of the Site.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

a. Enter judgment in favor of the United States and against the Defendant under Section 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1) & (2), for unreimbursed response costs incurred by the United States relating to contamination in groundwater at OU1 and soils at OU2, including enforcement costs and prejudgment interest, but excluding costs that are to be reimbursed under previously entered into administrative orders on consent;

b. Enter an order under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), requiring the Defendant to perform the response actions for organic contamination at OU1 and for soils at OU2 as described in the OU1/OU2 ROD and the OU1 ESD;

c. Enter a declaratory judgment on Defendant's liability that will be binding in any subsequent action for further response costs, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2); and

d. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
United States Department of Justice

Dated:11/20/2026

*s/Frederick S. Phillips*
FREDERICK S. PHILLIPS
D.C. Bar 433729
Senior Counsel
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611,
Ben Franklin Station
Washington, DC 20044-7611
(202) 532-3311
Frederick.Phillips@usdoj.gov

OF COUNSEL:

CLARA BEITIN
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 2
290 Broadway
NY, NY 10007
(212) 637-4382
Beitin.Clara@epa.gov